STATE of Wisconsin, Plaintiff-Respondent,

v.

Larry Wayne ECHOLS, Defendant-Appellant. †

Court of Appeals

*No. 89-0218-CR. Submitted on briefs September 5, 1989.—Decided October 25, 1989.*

(Also reported in 449 N.W.2d 320.)

†Petition to review denied.

728

For the plaintiff-respondent the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, with *Gregory M. Posner-Weber,* assistant attorney general of counsel, of Madison.

For the defendant-appellant the cause was submitted on the briefs of *Frank J. Campenni* of counsel, of Milwaukee.

Before Moser, P.J., Sullivan and Fine, JJ.

FINE, J. Larry Wayne Echols appeals from a judgment, entered on a jury verdict, convicting him of first degree murder, in violation of sec. 940.01, Stats. (1985–86), and from an order denying him post-conviction relief. [1] He alleges several trial-court errors. First, he contends that the trial court improperly did not submit to the jury the lesser-included offenses of manslaughter—heat of passion, under sec. 940.05(1), Stats. (1985–86), and homicide by reckless conduct, under sec. 940.06, Stats. (1985–86). Second, he argues that the trial court's "road map" instruction, crafted to assist the jury in following the lesser-included-offense instructions that were given, was confusing and incomplete. Third, he seeks reversal because the "road map" instruction was not preserved in the court file, and because he contends it was not physically given to the jury in writing. Fourth, he argues that the trial court erroneously admitted privileged evidence. Finally, he wants a new trial in the interest of justice. We affirm.

## I.

Echols was charged with fatally shooting Gene (Pete) Goudy in the early morning of March 2, 1986. The following is a summary of the evidence material to Echols' contentions on this appeal.

---

[1]Section 940.01, Stats. (1985–86), provided:

**First-degree murder. (1)** Whoever causes the death of another human being with intent to kill that person or another is guilty of a Class A felony.

(2) In this chapter "intent to kill" means the mental purpose to take the life of another human being.

Wisconsin's homicide law was extensively revised by 1987 Wis. Act 399. The new law applies to offenses committed on or after January 1, 1989. 1987 Wis. Act 399, sec. 3204(57)(ag).

Yolanda Legister, Echols' adult niece, testified that Echols, Goudy, and others were in her apartment on March 2. Her trial testimony concerning the shooting, however, was at odds with what a police detective testified she told him shortly after the shooting. Although she denied making these statements, the detective testified that Legister told him that she saw Echols point a gun at Goudy, that she had started to cry out "Larry, don't do it," and that Echols then shot Goudy when the two men were standing about five feet apart.[2] According to the officer's testimony, Legister told him that before the shooting, Echols and Goudy had argued over Goudy's alleged insults to Echols' friend, Laura Hines. Hines, who was present in the apartment that night, testified that the argument took place eight or nine minutes before the shooting. Hines told the jury that Echols and Goudy started out by pushing and shoving each other, but, ultimately, wound up fighting on the floor. At that point, Hines testified, she saw blood on Echols' forehead.

Another person present in the apartment at the time, Diane Snirley, testified that the struggle ended "less than five minutes" before the shooting, and that everything had calmed down by then. Snirley testified that she heard, but did not see, the shooting. She told the jury that Goudy ran past her after the shot was fired, and told her that Echols had shot him. According to Snirley's testimony, Echols also went past her, and explained that Goudy "was talking smart" and that "he got what he deserved." When Echols testified, he denied making these statements.

---

[2] The detective's testimony recounting what Legister allegedly told him was admissible under Rule 908.01(4)(a)1, Stats. (prior statement of witness is not hearsay if it is inconsistent with his or her trial testimony). The parties do not contend otherwise.

The detective's version of what Legister told him after the shooting was bolstered by the testimony of a clinical psychology intern with the Milwaukee County Mental Health Complex. The intern was Legister's therapist in January of 1987, and testified that Legister told him at a therapy session that she had seen Echols shoot Goudy.

Echols testified in his own defense. Given Echols' assertions that the trial court erred in not submitting to the jury the lesser-included offenses of manslaughter—heat of passion, and homicide by reckless conduct, we set out the material portions of his testimony in some detail. He responded to his attorney's questions as follows:

Q On March 2, 1986, did you cause the death of Pete Goudy?

A We did get into a scuffle. Whether I actually, well, I caused it, I'm not really sure I did.

. . ..

Q Did you mean to cause his death on March 2, 1986?

A No.

. . ..

Q How did he die?

A They say from a gunshot wound.

Q Do you know who shot the gun?

A I did fire a weapon.

Echols testified that he had gotten into an argument with Goudy, and that they "grabbed each other and . . . wrassled [sic] into the kitchen." He continued:

Then we tussled, and it [sic] was some beer cans on the sink, and they fell on the floor, and I slipped and hit my head on the sink, and he fell on top of me."

Some of the others in the apartment then broke up the fight. Echols testified that about five to seven minutes later, he was standing by a window in the living room holding a towel to his face when he heard Goudy come up behind him. According to Echols, they verbally taunted each other when, suddenly, "I seen [sic] him reach for something." This is how Echols described what happened next:

A After he had reached, then I saw something shiny because it reflected from the t.v.

Q Do you know what it was?

A No.

Q Did you find out what it was?

A Yes, I did.

Q What was it?

A It was a gun.

 . . ..

Q When you saw the gun come out, what is the first thing that you did?

A I grabbed his hand.

 . . ..

Q How far away were you standing from one another when you grabbed him?

A Standing about four feet maybe.

Q When you reached and grabbed the gun, what happened next?

A He tried to trip me, and he had his leg around mine.

. . ..

Q What happened next?

A Then I was trying to take the gun and he trying to push me off of him, and so I pushed him, and then I snatched it, and the gun I had in my hand and I fell back against—

Q What happened to [Goudy]?

A He was falling.

Q Toward you or away from you?

A He was falling away from me, and I bagged [sic, backed?] and hit the t.v. with my back, and that's when the gun discharged.

. . ..

Q When [Goudy] came up to you in the living room before the shooting and the second time you had words and whatever he said to you at that point—

A Yes.

Q Were you, how did you feel about your personal safety? What were you feeling?

A Well, I felt that I should grab him and try to keep him off of me.

Q Why?

A Because I saw him reach for something and I wasn't sure of what it was because I saw—it was shining because the t.v. reflected it, and I couldn't tell if it was a knife or what.

Q Did you shoot him to stop him from hurting you?

A No.

. . ..

Q Did you intend to shoot at him?

A No, I did not.

Q Did you aim the gun at him?

A Not intentionally.

The trial court instructed the jury on first degree murder, in violation of sec. 940.01, Stats. (1985–86), second degree murder, in violation of sec. 940.02(1), Stats. (1985–86),[3] and manslaughter—self-defense, in violation of sec. 940.05(2), Stats. (1985–86).[4] The jury found Echols guilty of first degree murder.

## II.

We first consider Echols' claim that the trial court erred in receiving the testimony by Legister's therapist that Legister told him that she had seen Echols shoot Goudy. At the trial, Echols contended that Legister's statements to the therapist were encompassed by the

---

[3]Section 940.02(1), Stats. (1985–86), provided:

**Second-degree murder.** Whoever causes the death of another human being under either of the following circumstances is guilty of a Class B felony:
 **(1)** By conduct imminently dangerous to another and evincing a depraved mind, regardless of human life . . ..

[4]Section 940.05(2), Stats. (1985–86), provided:

**Manslaughter.** Whoever causes the death of another human being under any of the following circumstances is guilty of a Class C felony:
. . ..
 **(2)** Unnecessarily, in the exercise of his privilege of self-defense or defense of others or the privilege to prevent or terminate the commission of a felony . . ..

psychologist-patient privilege, Rule 905.04(2), Stats.[5] Although the trial court ruled that Legister had waived the privilege by earlier testifying about her therapy, we need not analyze the correctness, *vel non,* of its ruling, since the preliminary inquiry of whether Echols has standing to raise the privilege on Legister's behalf is dispositive. *See State v. Horn,* 139 Wis. 2d 473, 490, 407 N.W.2d 854, 861–862 (1987) (appellate court should sustain correct ruling even though appellate court's decision rests "on a theory or on reasoning not presented" below).[6] Whether a party has standing to assert another's evidentiary privilege is a matter of first impression in this state.

■

Evidentiary privileges in Wisconsin are creatures of the constitutions, statutes, and rules. *See* Rule 905.01, Stats.; *see also Davison v. St. Paul Fire & Marine Ins. Co.,* 75 Wis. 2d 190, 202, 204–206, 248 N.W.2d 433, 440–442 (1977). They interfere with the trial's search for

---

[5]Rule 905.04(2), Stats., provides:

GENERAL RULE OF PRIVILEGE. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made or information obtained or disseminated for purposes of diagnosis or treatment of the patient's physical, mental or emotional condition, among the patient, the patient's physician, the patient's registered nurse, the patient's chiropractor, the patient's psychologist or persons, including members of the patient's family, who are participating in the diagnosis or treatment under the direction of the physician, registered nurse, chiropractor or psychologist.

[6]We also do not consider whether the therapist, who was not licensed under sec. 455.01(4), Stats., qualified as a "psychologist" under Rule 905.04(1)(e), Stats., which provides that a "psychologist" is "a licensed psychologist, as that term is defined in s. 455.01(4), or a person reasonably believed by the patient to be a psychologist."

the truth, and must be strictly construed, consistent with the fundamental tenet that the law has the right to every person's evidence. *See State v. Gilbert,* 109 Wis. 2d 501, 507–508, 326 N.W.2d 744, 747 (1982). Thus, Rule 905.01 provides:

> **Privileges recognized only as provided.** Except as provided by or inherent or implicit in statute or in rules adopted by the supreme court or required by the constitution of the United States or Wisconsin, no person has a privilege to:
> (1) Refuse to be a witness; or
> (2) Refuse to disclose any matter; or
> (3) Refuse to produce any object or writing; or
> (4) Prevent another from being a witness or disclosing any matter or producing any object or writing.

We must therefore analyze Rule 905.04, Stats., the source of Legister's psychologist-patient privilege, to determine whether Echols has standing to assert it.

Rule 905.04(3), Stats., makes it clear that the psychologist-patient privilege is personal to the patient. It provides:

> WHO MAY CLAIM THE PRIVILEGE. The privilege may be claimed by the patient, by the patient's guardian or conservator, or by the personal representative of a deceased patient. The person who was the physician, registered nurse, chiropractor or psychologist may claim the privilege but only on behalf of the patient. The authority so to do is presumed in the absence of evidence to the contrary.

*See also State ex rel. Klieger v. Alby,* 125 Wis. 2d 468, 472, 373 N.W.2d 57, 60 (Ct. App. 1985). The privilege must be claimed on the patient's behalf, and only by

those specifically authorized to do so by Rule 905.04(3). Unless specifically authorized by the rule to claim the privilege on the patient's behalf, a party has no standing to complain that testimony or other evidence will violate another person's privilege. *See* 8 J. Wigmore, *Evidence* sec. 2196 (McNaughton rev. 1961) ("The party against whom the testimony is brought has no right to claim or to urge the exemption on his own behalf." [Emphasis omitted.]); *see also* E. Cleary, *McCormick on Evidence* sec. 102 (3d ed. 1984) (party has no right to claim privilege on witness' behalf). This comports with the general rule that a "party may not rest his legal claims or defenses upon the rights of third parties." *State v. Horn,* 126 Wis. 2d 447, 453, 377 N.W.2d 176, 179 (Ct. App. 1985), *aff'd on other grounds,* 139 Wis. 2d 473, 407 N.W.2d 854 (1987). Since Echols was not authorized to assert the privilege on Legister's behalf, the testimony of Legister's therapist was properly admitted into evidence.

### III.

The next issue we consider is whether the trial court properly instructed the jury. Echols makes four arguments in this regard. He contends that the trial court improperly failed to submit the lesser-included offenses of manslaughter—heat of passion, and homicide by reckless conduct. He also argues that the trial court's so-called "road map" instruction was incomplete and confusing. Echols finally argues that the instruction was not preserved in the court file, and that a written copy of the instruction was not given to the jury as required by sec. 805.13(4), Stats. We discuss these points in turn.

## A.

The issue of whether a lesser-included offense should be submitted to the jury for its consideration is a legal issue that we determine independently. *State v. Kramar,* 149 Wis. 2d 767, 791, 440 N.W.2d 317, 327 (1989). A jury may be given a lesser-included-offense instruction "*only* when there are reasonable grounds in the evidence both for the acquittal on the greater charge and conviction on the lesser offense." *Id.* at 792, 440 N.W.2d at 327 (emphasis in original). In making this determination, the evidence must be viewed "in the light most favorable to the defendant." *Ibid.* Additionally, the trial court must, upon request, submit a lesser-included offense to the jury "even when the defendant has given exculpatory testimony" if a reasonable view of the evidence, including testimony by the defendant other than the exculpatory portions of that testimony, "supports acquittal on the greater charge and conviction on the lesser charge." *State v. Wilson,* 149 Wis. 2d 878, 900, 440 N.W.2d 534, 542 (1989). With these teachings in mind, we analyze whether Echols was entitled to have the jury consider the lesser-included offenses of manslaughter—heat of passion or homicide by reckless conduct.

### 1.

Although the trial court initially indicated that it would give a "heat of passion" instruction, it did not do so, and, after Echols' objected, noted that, in its view, "the evidence clearly did not comport with that proposition." We agree that a "heat of passion" instruction was not warranted.

Under sec. 940.05(1), Stats. (1985–86), a person was guilty of manslaughter if he or she "cause[d] the death of another human being . . . [w]ithout intent to kill and while in the heat of passion." Manslaughter was a lesser-included offense of first degree murder. Sec. 939.66(2), Stats. (1985–86). Before a defendant may be found guilty of taking a human life in the heat of passion under sec. 940.05(1), Stats. (1985–86), the provocation must not only have actually motivated the defendant but, in addition, must be such as would " 'so overcome and dominate or suspend the exercise of the judgment of an ordinary man as to render his mind for the time being deaf to the voice of reason.' " *State v. Williford,* 103 Wis. 2d 98, 113, 307 N.W.2d 277, 283 (1981) (quoting *Johnson v. State,* 129 Wis. 146, 160, 108 N.W. 55, 60 [1906]). When viewed in a light most favorable to Echols, the evidence here would not support his conviction for manslaughter—heat of passion, and, accordingly, he was not entitled to have that lesser-included offense submitted to the jury. *See Wilson,* 149 Wis. 2d at 902, 440 N.W.2d at 543 ("There must be enough evidence in the record to support a conviction on the lesser-included charge before a defendant is entitled to an instruction on the lesser-included offense." [Emphasis omitted.]).

2.

Like manslaughter—heat of passion, homicide by reckless conduct under sec. 940.06, Stats. (1985–86), was a lesser-included offense of first degree murder. Sec. 939.66(2), Stats. (1985–86). Sec. 940.06(2), Stats. (1985–86), defined "reckless conduct" as follows:

Reckless conduct consists of an act which creates a situation of unreasonable risk and high probability of

740

death or great bodily harm to another and which demonstrates a conscious disregard for the safety of another and a willingness to take known chances of perpetrating an injury. It is intended that this definition embraces all of the elements of what was heretofore known as gross negligence in the criminal law of Wisconsin.

■

In order to support a conviction of homicide by reckless conduct, the evidence must reasonably support the view that "death was caused without the intent to commit bodily harm, but the conduct of the actor was such that there was a high probability that someone would be killed or injured." *Hayzes v. State,* 64 Wis. 2d 189, 198, 218 N.W.2d 717, 722 (1974). While fighting over a gun did present a "situation of unreasonable risk and high probability of death or great bodily harm," sec. 940.06(2), Stats. (1985–86), Echols, if his testimony is to be believed, did not *create* that situation. *See Lofton v. State,* 83 Wis. 2d 472, 489, 266 N.W.2d 576, 583 (1978). His actions did not, as required by sec. 940.06(2), Stats. (1985–86), "demonstrate[ ] a conscious disregard for the safety of another and a willingness to take known chances of perpetrating an injury." Rather, if Echols is to be believed, Goudy was shot as Echols was attempting to take Goudy's gun from him, and the gun accidentally discharged when Echols fell against the television set. Under Echols' version, therefore, his conduct was not reckless at all—the shooting was an unfortunate result of a prudent attempt to protect himself from serious injury. *Cf. State v. McClose,* 95 Wis. 2d 49, 52, 289 N.W.2d 340, 341 (Ct. App. 1980) (sec. 940.06 "was designed to make it a felony crime for death resulting from total disregard for the safety of innocent people"). On the other hand, if that exculpatory portion of Echols' testimony is disre-

garded, *see Wilson,* 149 Wis. 2d at 900, 440 N.W.2d at 542, the remaining evidence requires a finding that he deliberately shot Goudy. Under either view, Echols could not have been convicted of homicide by reckless conduct, and, accordingly, he was not entitled to have that lesser-included offense submitted to the jury. *See ibid.* (defendant not entitled to have lesser-included offense submitted to jury unless evidence "supports acquittal on the greater charge and conviction on the lesser charge").

### B.

Echols claims he is entitled to a new trial because the trial court's "road map" instruction was incomplete and confusing. We disagree.

First, Echols asserts that the "road map" instruction was incomplete because it did not instruct the jury on manslaughter—heat of passion, or on homicide by reckless conduct. We have already determined that the trial court correctly rejected Echols' request to submit those lesser-included offenses to the jury.

Second, with respect to Echols' contention that the "road map" instruction was confusing, the jury was accurately and clearly instructed on the elements of first degree murder under sec. 940.01, Stats. (1985–86), and that it could not consider the lesser-included offenses of second degree murder and manslaughter—self-defense unless it first determined that the state had not proven Echols guilty of first degree murder beyond a reasonable doubt. The jury was also correctly and clearly instructed on the elements of each offense, and the state's burden of proof. The jury found Echols guilty of first degree murder, and the evidence manifestly supports that verdict. Thus, we need not consider whether the remainder of

the trial court's "road map" was confusing since there was "no reasonable possibility" that any error in that regard could have "contributed to [Echols'] conviction." *See State v. Dyess,* 124 Wis. 2d 525, 543, 370 N.W.2d 222, 231 (1985); *see also State v. Ivy,* 119 Wis. 2d 591, 603, 350 N.W.2d 622, 628 (1984) (Jury instructions "must not be judged in isolation, but must be considered as a whole.").

In any event, other than reiterating his request to have manslaughter—heat of passion and homicide by reckless conduct considered by the jury, Echols never objected to the "road map" instruction. Since there has been no "miscarriage of justice," that is, since there is not "a substantial probability that a different result would be likely on retrial," he has waived review by this court. *See State v. Schumacher,* 144 Wis. 2d 388, 400–402, 424 N.W.2d 672, 676–677 (1988); Rule 805.13(3), Stats.

## C.

Echols also contends that he is entitled to a new trial because the trial court's "road map" instruction was not preserved in the court file, and because it was not physically given to the jury as required by Rule 805.13(4), Stats.[7] These arguments are without merit.

First, the "road map" instruction was read to the jury, and the transcription has been included as part of the appellate record. This sufficiently preserves any alleged error for our review. *See State v. Perry,* 136 Wis.

---

[7]Rule 805.13(4), Stats., provides, in pertinent part, that "[t]he court shall provide the jury with one complete set of written instructions providing the burden of proof and the substantive law to be applied to the case to be decided."

2d 92, 99–100, 401 N.W.2d 748, 751–752 (1987).[8]

Second, the appellate record reveals that the "road map" instruction together with the check list *was* given to the jury to review. The trial court told the jury:

> In order to go through this procedure, the court is providing you with an outline which will be a guide for you to follow, and the outline consists as follows. And you will have this outline in just exactly the form that I read it now. This should be a guide for you.

After the court orally led the jury through the "road map" check list, it told the jury to "[f]ollow the road map and I think it might be a lot more clear than it is in describing it orally, so you don't have any picture in front of you." Indeed, after the bailiffs were sworn to take the jury into their custody for the duration of its deliberations, the trial court, commented—apparently to the bailiffs but perhaps to the jury—that "[t]his road map is just above the four forms of jury verdict." Echols has not established that Rule 805.13(4)'s requirement that one set of the substantive instructions be given to the jury in writing was not complied with.[9]

---

[8]Echols complains that the check list that the trial court prepared for the jury was also not preserved, and has included as part of his appendix a draft that the trial court gave to counsel for their review. This draft check list, however, was not made part of the appellate record, and we may not consider it. *Jenkins v. Sabourin,* 104 Wis. 2d 309, 313–314, 311 N.W.2d 600, 603 (1981).

[9]Accordingly, we do not consider the state's alternative arguments that the "road map" was not a substantive instruction, or that Echols was not prejudiced. *See Gross v. Hoffman,* 277 Wis. 296, 300, 277 N.W. 663, 665 (1938) (appellate court may rest decision on dispositive issue).

## IV.

Echols' final points for reversal rest on his contention that he is entitled to a new trial in the interest of justice. First, he argues that Legister's pre-trial statements were not worthy of belief. Credibility assessments, however, are for the jury, *State v. Lossman,* 118 Wis. 2d 526, 540–541, 348 N.W.2d 159, 166 (1984); *see also Rabata v. Dohner,* 45 Wis. 2d 111, 117, 172 N.W.2d 409, 411 (1969) (jury resolves conflict between witness' pretrial and trial testimony), and Echols concedes in his brief "that there was evidence upon which the jury could reach its verdict."

Second, Echols reargues the trial court's failure to instruct the jury on the lesser-included offenses of manslaughter—heat of passion, and homicide by reckless conduct. Larding a final catch-all plea for reversal with arguments that have already been rejected adds nothing; "[z]ero plus zero equals zero." *Mentek v. State,* 71 Wis. 2d 799, 809, 238 N.W.2d 752, 758 (1976). The real controversy here has been fully tried, and it is not probable that there would be a different result if the case were retried. *See* sec. 752.35, Stats.; *State v. Wyss,* 124 Wis. 2d 681, 735, 370 N.W.2d 745, 770 (1985). Echols is not entitled to a new trial in the interest of justice.

*By the Court.*—Judgment and order affirmed.