STATE of Wisconsin, Plaintiff-Respondent,

v.

James L. JOHNSON, Defendant-Appellant,†

Vonaire T. WASHINGTON, Defendant.

Court of Appeals

*No. 93–0735–CR. Submitted on briefs November 2, 1993.—Decided December 28, 1993.*

(Also reported in 510 N.W.2d 811.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jean J. Brown* of *Shneidman, Myers, Dowling & Blumenfield* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *William C. Wolford*, assistant attorney general.

Before Sullivan, Fine and Schudson, JJ.

FINE, J. James L. Johnson was convicted of two counts of armed robbery as party to a crime, *see* secs. 943.32(1)(a) and 939.05, Stats., and possession of a firearm by a felon, *see* sec. 941.29(1) & (2), Stats. Although Johnson originally appealed from that judgment and from the trial court's order denying his motion for post-

conviction relief, on January 14, 1993, this court ordered that the appeal be voluntarily dismissed so Johnson could pursue his motion for a new trial in the circuit court. The trial court denied that motion, and Johnson appeals.

Johnson asserts four claims of trial-court error. First, he contends that the trial court applied the wrong standard under Rule 908.045(4), Stats., in excluding an out-of-court statement. Second, Johnson argues that the trial court abused its discretion in not ordering a new trial because of what Johnson contends was newly-discovered evidence. Third, he claims trial-court error in receiving "other acts" evidence under Rule 904.04(2), Stats. Finally, he seeks a new trial "in the interests of justice." We affirm.

## I.

In the early afternoon of July 15, 1990, three men burst into the Jolly Skot tavern on West Lisbon Avenue in Milwaukee. One of the men was armed with a shotgun; another had a handgun. The tavern owner, who was tending bar at the time, fell to the floor so as not to get shot. The man brandishing the shotgun jumped onto the bar, and aimed the shotgun at the owner/bartender. The bartender heard the man with the shotgun ask: "Should I pop him?" and a reply from one of the other robbers: "Yes, pop him." The bartender was not shot, but the man wielding the shotgun took his wallet and loose currency. The robbers also took money from the tavern's cash register, and robbed three other persons in the tavern at the time.

Three days later, the tavern owner attended a four-man lineup. Although he could not visually identify any of the subjects as the robbers, he recognized Johnson's voice as that of the man who had discussed

"popping" him with the man holding the shotgun. Jane Marie Dornuff, who was in the Jolly Skot tavern during the robbery, identified Johnson as one of the robbers from a photograph of the lineup. She testified that Johnson was the man with the handgun, and that he had placed the gun to her head and took her wallet and bracelet. She and another tavern patron, James Earl Davis, testified at the trial that they had identified co-defendant Vonaire Washington as one of the robbers when he and one or, possibly, two others were brought to the tavern by police officers shortly after the robbery.[1] Dornuff testified that Washington was the man with the shotgun, although on cross examination she agreed with Johnson's lawyer that she "may have" earlier told police that it was Johnson.[2]

---

[1] Washington and the others were in a car in which the police found two shotguns and shotgun ammunition. Johnson was not in the car when the police stopped it.

[2] The cross-examination of Dornuff on this point is as follows:

Q Did you tell [the officer] that you are positive that number two [in the lineup, that is, Johnson] was the suspect with the shotgun, the suspect that jumped over the bar?

A I don't recall that.

Q Okay. You may have told him that?

A I may have.

Q But your testimony is that you're sure that it was not James Johnson who had the shotgun; is that right?

A Yes.

Johnson did not introduce evidence to support the inference underlying this line of questions. Thus, the following statement in Johnson's appellate brief, although technically accurate, is misleading: "On cross examination Dornuff testified that she may have earlier identified Johnson to [the police officer] as the one with the shotgun."

Two days after the robbery, police stopped a car driven by Johnson, and found a gun stuffed in the crease of the front seat. The officers searched Johnson and found a loaded clip for the gun, Dornuff's driver's license and identification card, and items of identification belonging to a John Miller and an Edward Kidd. Johnson told the officers that he had gotten the gun and the documents from a man he knew as "Sea Dog." Kidd, who was not one of the patrons at the Jolly Skot tavern, testified that Johnson took the papers from him during a robbery on July 15, 1990, the same day as the tavern robbery.[3]

Although, unlike his co-defendant Washington, Johnson did not testify, Johnson's defense was that he was not at the tavern during the robbery, and he called two friends as alibi witnesses. One of these witnesses, Carla J. Bellamy, admitted that she was Johnson's girlfriend and the mother of their daughter. She specifically denied knowing where the Jolly Skot tavern was, and denied going to the tavern either on July 15th or at any other time. Yet, both the Jolly Skot's owner/bartender and Davis testified that Bellamy walked into the tavern approximately ten to twenty minutes before the robbery, apparently used the pay telephone, and then left after about five minutes. They both told the jury that they did not hear Bellamy drop any coins into the telephone.

---

[3] An investigator hired by Johnson testified that Kidd had told him that Washington was the robber, and that he had identified Washington in a police lineup. This testimony, however, was contradicted by the police officer who conducted the lineup. The officer testified that Kidd identified Johnson as the man who had robbed him on July 15th. Indeed, the officer testified that Washington was not even in the lineup that Kidd saw.

Washington testified that he, too, was not at the tavern during the robbery but, rather, spent the day watching the movie *The Great Escape*, socializing with friends, and witnessing a shooting in his neighborhood. He denied meeting Johnson until after July 15th.

Both Johnson and Washington were found guilty of two counts each of armed robbery as party to a crime, and one count each of possession of a firearm by a felon.

## II.

### A. *Rule 908.045(4), Stats.*

Johnson claims that the trial court erred in not receiving into evidence an out-of-court statement by his brother, Walker B. Johnson, in which Walker Johnson asserted that he, and not the defendant, participated in the Jolly Skot tavern armed robberies. The written statement, given on August 28, 1990, to the private investigator hired by the defendant Johnson, claims that Walker Johnson, Washington, and a man named Gary "Blaine" went to the Jolly Skot tavern on July 15, 1990, to shoot pool, having left the defendant Johnson at a house where they had been eating. According to the statement, Washington claimed that a man who owed him some money frequented the tavern, but was not there that day—although the man's brother was. The statement relates what Walker Johnson contended happened next.

> And suddenly Washington and Blain [*sic*] had drawn guns and were demanding people to get on the floor. Washington told me [Walker Johnson] to help get the money, so I went through the pockets of two people who were laying on the floor of the bar. I

480

collected a wallet from one person, and about $3.00 from the second. I did not have any gun during the robbery.

My brother, James Johnson was definately [*sic*] <u>not</u> present at the robbery. People must have seen me, and later mistook him for me. . . .

My brother had no knowledge that there was going to be a robbery, nor was he any where [*sic*] near the bar at the time, to the best of my knowledge, he was still at the Bar-B-Que.

(Underlining in original, uppercase omitted.) Walker Johnson asserted his Fifth-Amendment privilege against self-incrimination, and refused to testify. Accordingly, he was "unavailable" as a witness. *See* Rule 908.04(1)(a), Stats.[4] The defendant Johnson therefore sought admission of his brother's statement under Rule 908.045(4), Stats.

Rule 908.045, Stats., provides:

The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . . .

(4) STATEMENT AGAINST INTEREST. A statement which was at the time of its making . . . so far tended to subject the declarant to . . . criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. A statement tending to expose the declarant to criminal liability and

---

[4] Rule 908.04(1)(a), Stats., provides:

(1) "Unavailability as a witness" includes situations in which the declarant:

(a) Is exempted by ruling of the judge on the ground of privilege from testifying concerning the subject matter of the declarant's statement[.]

481

offered to exculpate the accused is not admissible unless corroborated.

As with all evidentiary questions, the trial court decides whether the jury will hear or see a statement offered under Rule 908.045(4). *See* Rule 901.04(1), Stats. ("Preliminary questions concerning . . . the admissibility of evidence shall be determined by the judge, subject to sub.(2) . . ."). In deciding the admissibility of a Rule 908.045(4) statement, "[t]he question before the judge is not whether the judge personally believes the statement is true, but rather whether there is sufficient corroboration for a reasonable person to conclude that it could be true." *State v. Anderson*, 141 Wis. 2d 653, 665-666, 416 N.W.2d 276, 281 (1987). The analysis is thus one of conditional relevancy under Rule 901.04(2), Stats., which provides:

> When the relevancy of evidence depends on the fulfillment of a condition of fact, the judge shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

Under Rule 901.04(2): " 'The trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence. The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence.' " *State v. Schindler*, 146 Wis. 2d 47, 53-54, 429 N.W.2d 110, 113 (Ct. App. 1988) (adopting and quoting the analysis of FRE 104(b), the federal analogue of Rule 901.04(2), in *Huddleston v. United States*, 485 U.S. 681, 690-691 (1988)).

*Anderson*, which was, as are we, bound by the command in Rule 901.04, Stats., that the "admissibility of evidence is determined by the [trial] judge," did not reject the screening function in Rule 901.04, but, rather, rejected the more stringent test of admissibility used by the federal courts under FRE 804(b)(3), the counterpart to Rule 908.045(4), namely, that the required corroboration must " '*clearly* indicat[e] the trustworthiness of the statement.' " *Anderson*, 141 Wis. 2d at 659, 416 N.W.2d at 278 (emphasis by *Anderson*).[5] *Anderson*, however, does not require the admission of an out-of-court statement that tends to expose the declarant to criminal liability when the "corroboration" is merely debatable. Rather, *Anderson* recognized that a statement against penal interest offered to exculpate the accused must be excluded if the trial court, in the exercise of its discretion, concludes that, consistent with Rule 901.04(2), no reasonable jury could find that the statement could be true. *See Anderson*, 141 Wis. 2d at 664, 416 N.W.2d at 281 (among the "safeguards [that] exist for circumventing fabrication" is the trial court's power to "exclude the hearsay statement if the judge finds that its probative value is outweighed by its tendency to mislead to [*sic*] jury") (citing Rule 904.03, Stats.); *see Schindler*, 146 Wis. 2d at 54, 429 N.W.2d at 113 (test under Rule 901.04(2) is whether the "jury could reasonably find the conditional fact . . . by a preponderance of the evidence"). Thus, in *State v. Whit-*

---

[5] FRE 804(b)(3) provides, as pertinent to our discussion: "A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating *circumstances clearly indicate the trustworthiness of the statement*." (Emphasis added). The emphasized words do not appear in Rule 908.045(4), Stats.

*aker*, 167 Wis. 2d 247, 254-255, 481 N.W.2d 649, 652 (Ct. App. 1992), we upheld the trial court's exclusion of a statement when the trial court determined "that no reasonable person could conclude in all—in light of all the facts and circumstances that the statement could be true."

Johnson argued that sufficient corroboration was shown for the admission of his brother's statement because the statement recited facts that only someone who was present during the robbery would know. Johnson also noted that his brother had been convicted of four armed robberies involving a tavern, and that the Jolly Skot tavern robbery was thus consistent with his brother's criminality. In arguing against admission of the statement, the State pointed out in a representation that Johnson did not contest, that both Walker Johnson and the defendant Johnson were in the county jail at the same time. The State argued, therefore, that there was "no independent corroboration" of Walker Johnson's statement because there was an opportunity for the brothers to coordinate their stories. Additionally, the State argued that as a result of the four armed-robbery convictions, Walker Johnson had little to lose by accepting responsibility for the Jolly Skot tavern robbery.

 A trial court's decision to admit or exclude evidence is a discretionary determination and will not be upset on appeal if it has "a reasonable basis" and was made " 'in accordance with accepted legal standards and in accordance with the facts of record.' " *State v. Pharr*, 115 Wis. 2d 334, 342, 340 N.W.2d 498, 501 (1983) (citation omitted). Johnson claims that the trial court applied the more stringent federal standard in excluding Walker Johnson's statement. A careful anal-

ysis of the trial court's decision leads us to conclude, however, that the trial court applied the correct *Anderson* standard and based its decision on a "reasonable view of the evidence." *See Whitaker*, 167 Wis. 2d at 255, 481 N.W.2d at 652. Accordingly, its discretionary decision to exclude the statement must be upheld. *Ibid.*

In announcing its decision to exclude Walker Johnson's out-of-court statement, the trial court explained its rationale:

> The Court said in State v. Anderson at page 665, "The question before the Judge [*sic*] is not whether the Judge [*sic*] personally believes the statement is true, but rather, whether there is sufficient corroboration for a reasonable person to conclude that it could be true. Wisconsin law recognized that it is the juries' function to assess the credibility of witnesses and to weigh the evidence." Then, after some citations the Court went on to state, "By not requiring evidence which 'clearly,' " and clearly is in quotes, "Indicates [*sic*] trustworthiness, our standard does not thrust the Judge [ *sic*] into the jury's role of assessing credibility and weighing evidence. Thus it preserves the respective roles of the Judge [*sic*] and the jury."
>
> So there has to be some corroboration it seems to me which clearly indicates trustworthiness. . . .
>
> . . . .
>
> . . . I agree with you, determining credibility and assessing whether the statement is true or not is what the jury has to decide. I'm still trying to get over the hurdle of corroboration. I don't see it.
>
> . . . .
>
> I don't think the statement, at least his statement is self corroborating simply because there are some details of the offense. When it's his brother who was the accused, when all of the discovery material goes to the defendant and the statement

was made five or six weeks after the offense in the county jail, the same county jail I assume where the two brothers were kept.

(Intervening argument and some of the trial court's comments omitted.) Thus, although the trial court used the forbidden words "clearly indicates trustworthiness," they were uttered only seconds after the trial court specifically acknowledged that the applicable standard did not require corroboration to that level. We therefore conclude that this was merely a slip of the trial court's tongue, especially in light of the trial court's later comment that "determining credibility and assessing whether the statement is true or not is what the jury has to decide."[6]

The trial court appropriately considered Walker Johnson's motive to help his brother, and the total lack of corroborating information that was *independent* of what Walker Johnson could have learned from his brother while they were both in the county jail.[7] Addi-

---

[6] As we have seen, *Anderson* did not wholly divest the trial courts of authority to exclude a statement offered under Rule 908.045(4) if the trial court concludes that the statement is false, *see id.*, 141 Wis. 2d at 664, 416 N.W.2d at 281, so that no reasonable person could conclude that it was true, *see Whitaker*, 167 Wis. 2d at 254-255, 481 N.W.2d at 652. Indeed, as we have already noted, the applicable test is under Rule 901.04(2), Stats., which permits a trial court to admit conditionally relevant evidence only if a "jury could reasonably find the conditional fact . . . by a preponderance of the evidence." *See Schindler*, 146 Wis. 2d at 54, 429 N.W.2d at 113. The Dissent seems to draw a distinction between the use of the phrase "reasonable person" in *Anderson*, and "reasonable jury" in *Schindler* and *Huddleston*. We do not.

[7] The Dissent mischaracterizes our use of the word "independent." Of course a statement offered under Rule 908.045(4), Stats., can be sufficiently self-corroborating to be admissible.

tionally, based on the trial court's extensive experience with the criminal justice system, it doubted that Walker Johnson believed a confession to the Jolly Skot tavern robberies exposed him to prison time more than what he already faced as a result of his conviction for four armed robberies.[8] Thus, while much of the trial court's analysis focussed on the "corroboration" element, it also considered the related requirement in the rule that the statement be one "that a reasonable person in [Walker Johnson]'s position would not have made . . . unless [he] believed it to be true." *See* Rule 908.045(4), Stats. Subsequently, during the course of the hearing at which Walker Johnson asserted his Fifth-Amendment privilege, he testified unequivocally that the statement he gave to Johnson's investigator "was not a true statement."

Although, as is evident by the Dissent, not every judge might have decided the issue as did the trial court here, we cannot say that, viewing the trial court's analysis as a whole, it acted outside the proper ambit of its discretion. Accordingly, we affirm the trial court's

---

That is not the issue here, however. The facts recited in Walker Johnson's statement that are alleged to be corroborating were not independent of what Walker Johnson could have easily learned from his brother. This was a factor that the trial court could appropriately consider in the exercise of its discretion.

[8] Under Rule 902.01, Stats., we may take judicial notice of the trial court's experience as a judge familiar with the criminal justice system, and the accuracy of its observations. *See* Rule 902.01(6), Stats. ("Judicial notice may be taken at any stage of the proceeding."); Rule 902.01(2), Stats. (court may take judicial notice of any fact that is "not subject to reasonable dispute" because it is "generally known within the territorial jurisdiction of the trial court").

decision not to admit Walker Johnson's out- of-court statement.[9]

B. *Claim of newly-discovered evidence.*

The newly-discovered evidence proffered by Johnson was that when Davis, the only tavern patron other than Dornuff to testify, was shown photographs of seven men in July of 1992 by an investigator working for Washington, he identified Walker Johnson, Washington, and Gary Blair as the three men who had burst into the Jolly Skot tavern two years earlier. Although the defendant Johnson was part of this photo array, Davis did not pick him.[10] Johnson claims that this entitles him to a new trial for two reasons: 1) the evidence, by itself, puts the verdicts in doubt; and 2) the evidence provides critical corroboration for Walker Johnson's

---

[9] In a passing argument, Johnson contends that the trial court erred in not permitting him to call Walker Johnson as a witness so the jury could see him assert his privilege against self-incrimination. The trial court correctly applied the law. Rule 905.13(2) provides that: "In jury cases, proceedings shall be conducted, to the extent practicable, so as to facilitate the making of claims of privilege without the knowledge of the jury." This limitation, however, does "not apply in a *civil* case with respect to the privilege against self-incrimination." Rule 905.13(4), Stats. (emphasis added). Accordingly, because this is a criminal case, the trial court was correct in not allowing Walker Johnson to assert his privilege against self-incrimination in front of the jury. We have recently upheld application of Rule 905.13(4) in criminal cases against constitutional challenge. *See State v. Heft*, 178 Wis. 2d 823, 505 N.W.2d 437 (Ct. App. 1993), *review granted*, December 14, 1993.

[10] Davis also told the investigator that he thought that Walker Johnson and the defendant were brothers.

out-of-court statement, the exclusion of which puts the verdicts in doubt.

■

A decision whether to grant a new trial based on new evidence is governed by the following five factors:

> (1) The evidence must have come to the moving party's knowledge after a trial; (2) the moving party must not have been negligent in seeking to discover it; (3) the evidence must be material to the issue; (4) the testimony must not be merely cumulative to the testimony which was introduced at trial; and (5) it must be reasonably probable that a different result would be reached on a new trial.

*State v. Boyce*, 75 Wis. 2d 452, 457, 249 N.W.2d 758, 760-761 (1977) (citations omitted). All five elements must be met. *Id.*, 75 Wis. 2d at 457, 249 N.W.2d at 761. We will not reverse a trial court's denial of a motion for a new trial unless the trial court acted outside the proper bounds of its discretion. *Id.*, 75 Wis. 2d at 457, 249 N.W.2d at 760. Here, the trial court determined, *inter alia*, that Johnson's proffered new evidence did not entitle him to a new trial, concluding that the new evidence was not enough to "put[ ] the original judgment of conviction in doubt." We agree.

Although the State disputes that Johnson's new evidence satisfies factors (1), (2), and (5) of the test mandated by *Boyce*, we conclude, as did the trial court, that it is not reasonably probable that there would be a different result on a new trial if both Davis' identification of Walker Johnson and Walker Johnson's recanted out-of-court statement were admitted. Accordingly we assume, without deciding, that the new evidence satisfies the other *Boyce* factors. *See Gross v. Hoffman*, 227

Wis. 296, 300, 277 N.W. 663, 665 (1938) (only disposi-tive issue need be addressed).

There are five reasons why it is not reasonably probable that the result of any retrial would be differ-ent. First, when Johnson was arrested two days after the Jolly Skot tavern robberies, he had identification papers belonging to Dornuff, one of the patrons robbed by the three intruders. Second, his explanation that the documents had been given to him by "Sea Dog" was exposed by his concurrent possession of papers belong-ing to Kidd, who identified Johnson as the man who had taken them from him during a robbery on the very afternoon of the tavern robberies. Third, the testimony of one of his alibi witnesses was similarly exposed when, despite her testimony to the contrary, two of the Jolly Skot robbery victims identified her as being in the tavern shortly before the robberies. Fourth, the jury could have reasonably concluded, and a reasonable jury could reasonably conclude on any retrial, that this alibi witness was casing the tavern for the robbers, and that, therefore, her exculpatory testimony was part of their overall conspiracy. Fifth, assuming that Walker Johnson's out-of-court statement was admitted at any retrial, it is not reasonably probable that a jury would credit that statement in light of all the evidence of record including his subsequent recantation, even though both Davis and Walker's statement identified a "Blaine" as the third robber— a *de minimis* corrobora-tion because of the Johnson brothers' opportunity to confer.[11]

---

[11] The statement's substitution of the name "Blaine" for the third robber's real name, Blair, is consistent with the state-ment's fabrication. If Walker Johnson were involved in the Jolly Skot tavern robbery he would, presumably, know Blair's name. On the other hand, if he were told by the defendant Johnson

The trial court appropriately analyzed the fifth factor set out in *Boyce*. The denial of Johnson's motion for a new trial was thus within the scope of the trial court's discretion and must be affirmed.

## C. *Rule 904.04(2), Stats.*

Johnson contends that the trial court erred in admitting Kidd's testimony that Johnson robbed him on July 15, 1990. We disagree.

As we have seen, a police officer testified that when Johnson was stopped on July 17, 1990, he told the officers that identification papers belonging to Dornuff and Kidd had been given to him by a man he knew as "Sea Dog." This testimony was elicited by Johnson's lawyer on cross-examination and was a critical explanation as to why Johnson had property belonging to one of the victims of the Jolly Skot tavern robbery.[12] The State was, therefore, entitled to rebut this evidence of innocent possession, and Kidd's testimony was certainly relevant on that issue. *See* Rule 904.01, Stats. (" 'Relevant evidence' means evidence

---

that the third man was Blair, Walker Johnson could have very well remembered the name as "Blaine" or "Blain" when he gave the statement to the investigator.

[12] The officer's testimony as to what Johnson told him was hearsay because it was elicited by Johnson. *See* Rule 908.01(3), Stats. (" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). Neither the State nor Washington objected. Unobjected-to hearsay is admissible. *State v. Heredia*, 172 Wis. 2d 479, 482 n.1, 493 N.W.2d 404, 406 n.1 (Ct. App. 1992), *cert. denied*, 113 S. Ct. 2386 (1993).

having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). The first hurdle to the admission of Kidd's testimony was thus cleared. The second two hurdles were cleared as well.

Rule 904.04(2), Stats., permits the admission of evidence of "other crimes, wrongs, or acts" as proof of any probative issue *other than* "the character of the person in order to show action in conformity therewith." Thus, proof of other acts is admissible for "other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identification, or absence of mistake or accident." *Ibid.* This list is illustrative only and not exclusive. *State v. Bedker*, 149 Wis. 2d 257, 264-265, 440 N.W.2d 802, 804 (Ct. App. 1989). Kidd's testimony was not admitted to demonstrate Johnson's propensity to rob; it was admitted to rebut Johnson's exculpatory explanation to the police officer that Dornuff's identification papers were given to him by "Sea Dog." The jury could logically work through the following syllogism: Johnson claimed that Dornuff's identification papers were given to him by "Sea Dog"; Johnson claimed that Kidd's identification papers were given to him by "Sea Dog"; Kidd's testimony makes Johnson's explanation false as to Kidd's identification papers; therefore Johnson's explanation is also false as to Dornuff's identification papers. Kidd's testimony was thus within Rule 904.04(2), Stats.

The third hurdle to the admission of other-acts evidence is Rule 904.03, Stats., which requires exclusion of evidence whose "probative value" is "substantially outweighed by the danger of unfair

prejudice." Although Johnson claims on appeal that the trial court failed to analyze this prerequisite to admissibility, he failed to ask the trial court to specifically address Rule 904.03, and thus waived his right to assert this ground as error. *See State v. Chambers*, 173 Wis. 2d 237, 256, 496 N.W.2d 191, 198 (Ct. App. 1992). Nevertheless, it is clear from the evidence of record that admission of Kidd's testimony to rebut Johnson's explanation was highly relevant and was not "substantially outweighed by the danger of unfair prejudice." Although Kidd's testimony was obviously hurtful to Johnson's defense and, therefore, was in the general sense "prejudicial," the "prejudice" was not *un*fair. *See State v. Moridica*, 168 Wis. 2d 593, 605, 484 N.W.2d 352, 357 (Ct. App. 1992) ("[U]nfair prejudice means a tendency to influence the outcome by *improper* means.") (emphasis in original). Indeed, exclusion of Kidd's testimony would have unfairly hindered the jury's search for the truth, and its just determination of Johnson's guilt or innocence. *See* Rule 901.02, Stats. ("Chapters 901 to 911 shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined."). The trial court's admission of Kidd's testimony was well within the scope of its discretion.[13]

---

[13] Johnson claims that the evidence was improperly admitted under Rule 906.08(2), Stats., which prohibits the impeachment of a witness's credibility by extrinsic evidence. Rule 906.08, however, has no application to the admission or exclusion of Kidd's testimony, and was not relied on by the trial court. Kidd's testimony, unlike the testimony in *McClelland v. State*, 84 Wis. 2d 145, 153-162, 267 N.W.2d 843, 847-850 (1978), to which Johnson points, was not received as a general attack on

D. *Interests of justice.*

 Johnson claims that the real controversy between him and the State was not tried, and seeks a new trial in what he contends is the "interests of justice." Although we may reverse a conviction under the authority granted to us by section 752.35, Stats., when the "real controversy has not been fully tried," that is not the case here. Johnson's essentially undeveloped argument in support of this last-ditch plea for a new trial merely repeats the substance of his other arguments, which we have already rejected. *See State v. Echols*, 152 Wis. 2d 725, 745, 449 N.W.2d 320, 327 (Ct. App. 1989) ("Larding a final catch-all plea for reversal with arguments that have already been rejected adds nothing[.]"). Johnson has had a fair trial. The evidence against him was overwhelming. He is not entitled to again put the State to its proof.

*By the Court.*—Order affirmed.

SCHUDSON, J. (*concurring in part; dissenting in part*). I agree with the majority's analysis in part II. C., and the conclusion that the trial court correctly admitted Kidd's testimony that Johnson robbed him. With considerable reservations, I also accept the majority's analysis and conclusion in part II. B., regarding the newly-discovered evidence. Although I think it dubious to conclude that "it is not reasonably probable that there would be a different result on a new trial if both

---

Johnson's credibility. Rather, Kidd's testimony, as already noted, was received to rebut Johnson's innocent explanation for possessing property that was recently taken in an armed robbery.

Davis' identification of Walker Johnson and Walker Johnson's recanted out-of-court statement were admitted[,]" majority op. at 489, I, like the majority, cannot say that "the trial court acted outside the bounds of its discretion," *id.*, in reaching its conclusion. I do not, however, agree with the majority's analysis or conclusion in part II. A.

As the majority concedes, the trial court stated, "So there has to be some corroboration it seems to me which clearly indicates trustworthiness." Majority op. at 485. As the majority further concedes, these are "the forbidden words," *id.*, because they invoke "the more stringent test of admissibility used by the federal courts," *id.* at 482–483, and, as the majority acknowledges, the more stringent test was rejected in *State v. Anderson*, 141 Wis. 2d 653, 416 N.W.2d 276 (1987). Nevertheless, the majority concludes that the trial court ultimately applied the correct standard and that the trial court's declaration of the incorrect standard "was merely a slip of the trial court's tongue." Majority op. at 486.

I give the trial court more credit. I accept that after discussing *Anderson*, the trial court clearly, and erroneously, reached its conclusion:

> *So* there has to be some corroboration it seems to me which clearly indicates trustworthiness.

(Emphasis added.) Indeed, the trial court's analysis conformed to the erroneous standard it stated. The trial court addressed factors relevant to whether the statement "clearly indicates trustworthiness," specifically discussing Walker Johnson's possible motives to fabricate, his possible communication with the defendant while they were incarcerated, and his recantation of the statement. In addressing these factors, the trial

court assumed the role against which *Anderson* warned:

> By not requiring evidence which "clearly" indicates trustworthiness, our standard does not thrust the judge into the jury's role of assessing credibility and weighing evidence.

*Anderson*, 141 Wis. 2d at 666, 416 N.W.2d at 281.

Like the admirable character of the Seuss story, the trial judge "meant what he said [a]nd he said what he meant . . . ." DR. SEUSS, *Horton Hatches the Egg* (1940). The trial court explicitly invoked the wrong standard and then applied it. In concluding that the trial court's explicit error was an inconsequential "slip of the tongue," the majority itself slips.

Unfortunately, this is not the majority's only slip.

Without explanation, the majority alters the *Anderson* standard. As accurately cited in the majority's opinion, majority op. at 482, *Anderson* held that in deciding the admissibility of a statement under sec. 908.045(4), Stats.:

> The question before the judge is not whether the judge personally believes the statement is true, but rather whether there is sufficient corroboration for *a reasonable person* to conclude that it could be true.

*Anderson*, 141 Wis. 2d at 665-66, 416 N.W.2d at 281 (1987) (emphasis added). One paragraph later, however, the majority inaccurately paraphrases *Anderson*:

> *Anderson* recognized that a statement against penal interest offered to exculpate the accused *must be excluded* if the trial court . . . concludes that . . . *no reasonable jury* could find that the statement could be true.

Majority op. at 483 (emphasis added). Thus, altered by the majority, the standard (1) focuses on a unanimous jury rather than on any one of twelve reasonable persons who may comprise the jury and may, quite reasonably, view evidence in different ways; and (2) converts a positive standard that facilitates admission of evidence to a negative standard that virtually mandates exclusion of evidence.

Next, the majority slips again by adding a requirement to the statutory prerequisite for corroboration. The majority states that "[t]he trial court appropriately considered . . . the total lack of corroborating information that was *independent* . . . ." Majority op. at 486. Section 908.045(4), Stats., however, provides:

> A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborated.

Now, the majority implies, the corroboration must be *"independent"* of what the declarant could have learned from the defendant. Hypertechnically, one could argue that, in some cases, this addition does not conflict with *Anderson* because it goes directly to the *sufficiency* of the *corroboration* rather than to the *credibility* of the *statement*. In this case, however, the details of the statement itself provide much of the corroboration for the statement. Thus, to reject the corroboration for lack of sufficiency because it is not "independent" is to reject the statement itself for lack of credibility.

Although the corroboration considered in *Anderson* was independent of the statement itself, *Anderson* did not address whether corroboration must be separate from the statement. The majority suggests that perhaps it must be. That suggestion, however, is dubious, particularly in light of the theme of *Anderson* that

497

would enlarge rather than restrict the potential for admissibility of such evidence. In some cases, an "independent source" requirement would preclude a jury's consideration of highly probative evidence. Moreover, in some cases the declarant's details of the offense may be the only available corroboration.

Consider the following two statements under sec. 908.045(4), Stats.: (1) "He didn't do it, I did," accompanied by no corroborating evidence or additional statement; and (2) "He didn't do it, I did," accompanied by no corroborating evidence except the declarant's additional statements detailing the offense. Clearly, the first statement is inadmissible; there is no corroboration. The second statement, however, may be admissible unless we add an "independent source" requirement. *Further, as a jury is entitled to conclude, the second statement may be reliable even if the details correspond to those the declarant could have learned from the defendant.*

Under *Anderson*, although the trial court still reviews whether the corroboration is "sufficient to permit a reasonable person to conclude, in light of all the facts and circumstances, that the statement could be true," *Anderson*, 141 Wis. 2d at 656, 416 N.W.2d at 277, the trial court must not "thrust [itself] into the jury's role of assessing credibility and weighing evidence." *Id.*, 141 Wis. 2d at 666, 416 N.W.2d at 281. In some cases, no doubt, the source of the corroboration will be among the "facts and circumstances" the jury considers.

Some statements offered to exculpate the accused are reliable. Others are not. Their reliability, however, does not necessarily depend on whether the corroborating source is independent. After all, although details within an exculpatory statement may be unreliable,

corroboration provided by an independent source may be unreliable, too. And although details within the statement may have come from collusion, corroborating evidence from an independent source can come from collusion, too. Thus, in any given case, while the "sufficiency" of corroboration under *Anderson* may *logically* depend, in part, on the source of corroboration, the "sufficiency" of corroboration under *Anderson* must not *legally* depend only on whether the source is independent of the statement, or whether the declarant's information could have come from the defendant.

In this case, understandably, the trial court considered the corroborating details of the statement to be suspect because of the potential collusion between Walker Johnson and the defendant. The trial court's suspicion, however, relates directly to the credibility of the declarant and the weight of his testimony, not to its admissibility. Exclusion of the statement because of the trial court's suspicion conflicts with the *Anderson* admonishment that "[t]he question before the judge is not whether the judge personally believes the statement is true . . . ." *Anderson*, 141 Wis. 2d at 665-66, 416 N.W.2d at 281.

Finally, the majority slips by relying on exactly what *Anderson* proscribes — the judge's personal belief. Basing its decision, in part, on the trial judge's "doubt[ ] [about the declarant] based on the trial court's extensive experience with the criminal justice system," the majority assumes facts beyond this record. Majority op. at 486–87. It further implies that the same declaration of the incorrect standard from a less experienced judge might not be similarly excused as "merely a slip of the trial court's tongue." That implication would complete the conversion of the *Anderson* standard to no standard at all or, perhaps, to the very

standard emphatically supported by the *dissenters* in *Anderson.*

Under *Anderson,* the corroboration need not "clearly indicate trustworthiness" of the statement. The corroboration, to be "sufficient," only requires that it "permit a reasonable person to conclude, in light of all the facts and circumstances, that the statement could be true." *Anderson,* 141 Wis. 2d at 656, 416 N.W.2d at 277. Dissenting from that very distinction, Justice Ceci, in an opinion joined by Justice Steinmetz, maintained:

> The focus should be not upon the reasonableness of the statement's content and the possibility of its having been made, but upon the reasonableness of the corroboration and whether the corroborative evidence indicates that the statement was probably made.

*Id.,* 141 Wis. 2d at 672, 416 N.W.2d at 284 (Ceci, J., dissenting). The supreme court rejected that position. Instead, it adopted the standard that "facilitates rather than restricts the defendant's ability to present evidence." *Id.,* 141 Wis. 2d at 665, 416 N.W.2d at 281.

The merits of the distinction defined in *Anderson* may be fairly debated and, perhaps, the dissenters may prevail some day. The distinction, however, was identified and carefully considered in *Anderson* and the supreme court chose a standard that differs significantly from the federal standard endorsed by the dissenters. In this case, the majority's opinion reasonably could be read to support the dissenting position in *Anderson.*

In this case, the trial court confronted a difficult evidentiary issue complicated by the fact that Johnson sought to support the admissibility of an exculpatory

statement with corroboration supplied, in part, by the details of the statement. The trial court erroneously applied the federal standard rather than the less stringent *Anderson* standard. At the very least, the majority now clouds the issue and, analytically, undermines the *Anderson* standard. At most, the majority now adopts the position unsuccessfully advocated by the dissenters in *Anderson*.

Applying *Anderson* as we must, I would reverse and require a new trial at which both the statement of Walker Johnson and the newly-discovered evidence would be admissible. Accordingly, on this issue, I respectfully dissent.