STATE of Wisconsin, Plaintiff-Respondent,

v.

Joseph J. GUERARD, Defendant-Appellant-Petitioner.

Supreme Court

*No. 02–2404–CR. Oral argument April 26, 2004.—Decided June 29, 2004.*

2004 WI 85

(Also reported in 682 N.W.2d 12.)

ABRAHAMSON, C.J., concurs.
BRADLEY, J., joins.

■■■■■■■■■■

■■■■■■■■■■

For the defendant-appellant-petitioner there was a brief by *Joseph L. Sommers,* Madison, and oral argument by *Joseph L. Sommers.* .

For the plaintiff-respondent the cause was argued by *Marguerite M. Moeller,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1 DIANE S. SYKES, J. This case concerns the corroboration requirement for the admission of a hearsay statement against penal interest under Wis. Stat. § 908.045(4) (2001–02).[1] The issue arises in the context of a claim of ineffective assistance of trial counsel.

¶ 2. The defendant was convicted of numerous serious felonies in connection with a home-invasion assault, robbery, and theft of guns. The defendant was identified in photo arrays and a line-up by the victim and an eyewitness who was present in the home at the time of the crimes. However, the defendant's brother told his sister and an investigator for the State Public Defender's ("SPD") office that he, not the defendant, committed the crimes, providing a detailed factual description of the events before, during, and after the crimes.

¶ 3. On the day of trial, the defendant's brother invoked his right against self-incrimination and refused to testify. The defense attorney initiated an effort to gain admission of the brother's out—of-court confession to his sister, but inexplicably did not follow through. The attorney, who was the defendant's second counsel, did not seek admission of the brother's additional

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise indicated.

confession to the SPD investigator or alert the circuit court to the existence of that separate statement as corroboration for the brother's confession to his sister. The defendant was convicted and sentenced to 52 years in prison.

¶ 4. The circuit court rejected the defendant's claim of ineffective assistance of counsel, concluding that there was no prejudice because the hearsay statements would have been excluded as insufficiently corroborated by "independent" evidence. The court of appeals affirmed. We reverse.

¶ 5. We conclude that the brother's statements against penal interest were sufficiently corroborated under Wis. Stat. § 908.045(4). The standard for corroboration of hearsay statements against penal interest is "corroboration sufficient to permit a reasonable person to conclude, in light of all the facts and circumstances, that the statement could be true." *State v. Anderson,* 141 Wis. 2d 653, 660, 416 N.W.2d 276 (1987). This standard can be met in appropriate circumstances by a repetition of the self-inculpatory statement to another witness, and in this sense can be sufficiently "self-corroborating" to be admissible under the statute. The lower courts erred to the extent that they purported to require the proponent of the hearsay statement against penal interest to produce "independent" evidence in order to satisfy the corroboration requirement for admission.

¶ 6. We further conclude that the defendant has carried his burden of demonstrating his trial counsel's ineffectiveness in connection with the failure to gain admission of these admissible hearsay statements exculpating the defendant. Trial counsel's failure to put before the circuit court judge and jury the brother's self-inculpatory statements exculpating the defendant

was not objectively reasonable, and therefore constituted deficient performance. We also conclude that there is a reasonable probability that, but for trial counsel's error, the result of the proceeding would have been different, and therefore the error was prejudicial.

## I. FACTS AND PROCEDURAL HISTORY

¶ 7. Joseph Guerard ("Guerard") was convicted in 1996 in Ozaukee County Circuit Court of one count of armed burglary, one count of armed robbery, one count of aggravated battery, and five counts of theft. The convictions stemmed from a violent break-in of a home in Cedarburg during which one of the residents was physically assaulted and five guns stolen.

¶ 8. The State built its case around the testimony of the victim, Elizabeth Borchelt. She testified that on the morning of February 23, 1996, a man came to her front door and asked to speak with a person named "Dana." Borchelt told him there was no "Dana" who lived there, and the man departed. Borchelt went upstairs and the man returned a few minutes later, rang the bell, and burst into the home after Borchelt's six-year-old daughter answered the door.

¶ 9. Once inside, the intruder went upstairs where he confronted Borchelt in her bedroom. Borchelt testified that the man was wearing a turtleneck shirt pulled up over his nose and a sweatshirt hood pulled over the top of his head. He demanded that Borchelt get on her bed, which she refused to do. He then made a move that Borchelt interpreted as an attempt to draw a weapon from inside his waistband, so Borchelt grabbed him and pushed him down the stairs. The two struggled at the bottom of the stairs, with Borchelt trying unsuccessfully to force the man through the front doorway. At

that point, Borchelt testified, the man started hitting her, breaking her nose and bruising her face, ear, and head. He then demanded that she give him the key to the gun cabinet. Borchelt did not have the key, so the man removed a knife from his pants and broke the glass door of the gun cabinet with either the butt or the point of the blade.

¶ 10. The intruder then removed several guns from the cabinet and used one to intimidate Borchelt and her mother, who emerged from her basement bedroom at just this moment. Borchelt's mother placed herself between the intruder and her daughter and told him he could take some money that was lying on the kitchen table. The man grabbed about $8, apologized to Borchelt for hitting her, and fled from the house.

¶ 11. Several days later, Borchelt and her mother identified the defendant, Joseph Guerard, in photo arrays and a line-up. They also identified him in court during the trial as the perpetrator of these crimes.

¶ 12. The strategy of the defense was to argue that Guerard was misidentified; that he was not present when the break-in occurred, and that evidence pointed to his brother, Daniel Guerard ("Daniel"), as the perpetrator. Just before the trial began, Guerard's attorney, Thomas Kurzynski, informed the circuit court judge, the Honorable Tom R. Wolfgram, that Daniel had made a statement to him inculpating himself and exculpating Guerard. The prosecutor reminded the court that Kurzynski could not testify to that statement and also remain as Guerard's counsel. Daniel, in custody on other charges, was brought into court and sworn. Kurzynski began to question him about the inculpatory statement he had made to Kurzynski, and Daniel invoked his Fifth Amendment right against

self-incrimination. The judge held that Daniel was unavailable to testify under Wis. Stat. § 908.04.

¶ 13. Kurzynski then informed the court that Daniel had also confessed to his sister, Judy Cole, and that Cole was prepared to testify. The parties discussed whether Daniel's admission to Cole was corroborated under Wis. Stat. § 908.045(4), but the discussion was inconclusive. The subject turned to whether Kurzynski would be permitted to conduct a "courtroom lineup" involving Guerard and Daniel (he was not), and the admissibility of Cole's testimony about Daniel's statement was never discussed again for the remainder of the trial.

¶ 14. Kurzynski did not inform the court that there was additional evidence that could corroborate Daniel's statement to Cole that he, not Guerard, was the person who committed these crimes. Kurzynski had in his possession several written reports prepared by Christian York, an investigator in the State Public Defender's office who had worked with Guerard's first lawyer. About four months before Guerard's trial, York took Cole's statement, in which she reported that Daniel had, on the day of the break-in, confessed to her that he had committed the crimes. She related his confession in some detail, and also said that she had possession of the clothes he was wearing at the time. York also interviewed Blanca Guerard, Joseph and Daniel's mother, who told him that Daniel did not specifically tell her whether or not he had committed the crimes, but did tell her that Joseph did not do so. Finally, York interviewed Daniel himself, who provided a detailed statement incriminating himself and exculpating Guerard. All three of these interviews were

260

memorialized in written reports signed by Investigator York. York also had a signed handwritten statement from Cole.

¶ 15. Kurzynski did not bring any of these statements to the circuit court's attention, nor did he subpoena York to testify. Indeed, Kurzynski later admitted that he never spoke to York before Guerard's trial.

¶ 16. Guerard testified in his own defense and said he was not involved in the crimes.[2] He told the jury that on the morning of the incident, his brother Daniel picked him up and drove him around town, describing a plan to break into the Borchelt residence and steal several guns. Guerard testified that he refused to participate in Daniel's plan and tried to dissuade Daniel from going through with it. According to Guerard, Daniel dropped him off at a gas station next to the Northridge shopping mall and drove away. Guerard waited there for over an hour until Daniel returned. Guerard testified that when he got into the car he noticed a bag containing guns on the floor, and that Daniel's hand was bleeding. Guerard said that Daniel told him he cut his hand when smashing through the glass door of the Borchelt's gun cabinet.

¶ 17. Guerard was convicted and sentenced to a total of 52 years imprisonment. Guerard's initial appellate counsel did not complete his appeal. In 2001, Guerard filed a petition for a writ of habeas corpus in the court of appeals pursuant to *State v. Knight,* 168 Wis. 2d 509, 484 N.W.2d 540 (1992), alleging that he received ineffective assistance of appellate counsel. The

---

[2] The prosecutor argued that Guerard should not be permitted to testify that he was somewhere else when the crimes were committed, as that would constitute an alibi defense of which proper notice had not been given under Wis. Stat. § 971.23(8)(a). The circuit court allowed the testimony.

court of appeals sua sponte construed the petition as a request to extend time to file a notice of appeal or a motion for postconviction relief, and reinstated Guerard's appellate rights without addressing the claim of ineffective assistance of appellate counsel.[3] After new appellate counsel was appointed, Guerard filed a motion for postconviction relief in the circuit court, asserting that he had received ineffective assistance of trial counsel. After a *Machner* hearing,[4] the court denied the motion, concluding that although Kurzynski's failure to follow through on the effort to admit Daniel's inculpatory statements may have constituted deficient performance, Guerard suffered no prejudice because the statements were inadmissible due to lack of corroboration. The court viewed the fact that Daniel had confessed to more than one person, and on separate occasions, as insufficiently corroborative as a matter of law.

¶ 18. Guerard appealed and the court of appeals affirmed, holding that regardless of whether Kurzynski's performance was deficient (the court did not decide that question), Guerard suffered no prejudice because Daniel's self-inculpatory statements exculpating Guerard were insufficiently corroborated and therefore inadmissible under Wis. Stat. § 908.045(4).

---

[3] We hold in *State v. Evans*, 2004 WI 84, 273 Wis. 2d 192, 682 N.W.2d 784, that the enlargement of time statute, Wis. Stat. § (Rule) 809.82(2), may not be used to "short-cut" the ineffective assistance of appellate counsel procedure established in *State v. Knight*, 168 Wis. 2d 509, 484 N.W.2d 540 (1992). Here, however, the State did not object, either in the court of appeals or in this court, and therefore any challenge to the court of appeals' sua sponte invocation of the enlargement of time statute is deemed waived.

[4] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

The court of appeals reached this conclusion by applying the corroboration standard set forth in *State v. Johnson*, 181 Wis. 2d 470, 510 N.W.2d 811 (Ct. App. 1993). Citing *Johnson, id.* at 483, the court of appeals held that a statement against penal interest by a declarant who is unavailable to testify is not admissible if the corroboration is "merely debatable." The court of appeals also agreed with the circuit court that a repetition of a hearsay confession to more than one person does not corroborate the confession. Concluding that there was no "independent evidence" to corroborate Daniel's self-inculpatory statements, and that his statements were inconsistent with the victim's testimony, the court of appeals held that they were inadmissible. Accordingly, the court concluded that Guerard suffered no prejudice because of Kurzynski's failure to introduce Daniel's hearsay statements against penal interest.

## II. STANDARD OF REVIEW

¶ 19. Whether a defendant's trial counsel provided ineffective assistance of counsel is a mixed question of law and fact. *Strickland v. Washington*, 466 U.S. 668, 698 (1984); *State v. Franklin*, 2001 WI 104, ¶ 12, 245 Wis. 2d 582, 629 N.W.2d 289. We will not disturb the circuit court's factual findings unless they are clearly erroneous. *Franklin*, 245 Wis. 2d 582, ¶ 12. Whether trial counsel's performance was deficient, and whether any such deficiency was prejudicial to the defendant, are questions of law that we review independently. *Id.*

¶ 20. This court will sustain an evidentiary ruling if it finds "that the circuit court examined the relevant facts; applied a proper standard of law; and using a

demonstrative rational process, reached a conclusion that a reasonable judge could reach." *State v. Tucker,* 2003 WI 12, ¶ 28, 259 Wis. 2d 484, 657 N.W.2d 374 (quoting *State v. Gray,* 225 Wis. 2d 39, 48, 590 N.W.2d 918 (1999)). We accept the facts as found by the circuit court unless they are clearly erroneous, but whether the circuit court applied a correct standard of law is itself a question of law that we review de novo.

## III. DISCUSSION

### A. Corroboration of Statements Against Penal Interest

¶ 21. Wisconsin Stat. § 908.045 prescribes the circumstances under which hearsay statements by an unavailable declarant may be admissible. The rule provides, in pertinent part:

> The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> . . .
>
> (4) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability or to render invalid a claim by the declarant against another or to make the declarant an object of hatred, ridicule, or disgrace, that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. *A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborated.*

Wis. Stat. § 908.045 (emphasis added).

264

¶ 22. The admissibility of evidence falling within Wis. Stat. § 908.045(4) presents a question of conditional relevance under Wis. Stat. § 901.04(2), which provides:

> When the relevancy of evidence depends upon the fulfillment of a condition of fact, the judge shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

¶ 23. The central issue in this case is the extent of corroboration required under Wis. Stat. § 908.045(4) for statements tending to expose the declarant to criminal liability and offered to exculpate the accused. We addressed this issue at length in *Anderson,* holding that the standard for corroboration under Wis. Stat. § 908.045(4) is "corroboration sufficient to permit a reasonable person to conclude, in light of all the facts and circumstances, that the statement could be true." *Anderson,* 141 Wis. 2d at 662.

¶ 24. Thus, under *Anderson,* Wis. Stat. §§ 908.045(4) and 901.04(2) together permit the admission of an out-of-court statement against penal interest by a declarant who is unavailable if: 1) the statement when made tended to expose the declarant to criminal liability; and 2) the statement is corroborated by evidence that is sufficient to enable a reasonable person to conclude, in light of all the facts and circumstances, that the statement could be true. *Id.* If a statement satisfies these specific conditions, a court may still exclude it on the general grounds that its probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of

time, or needless presentation of cumulative evidence." Wis. Stat. § 904.03; *Anderson,* 141 Wis. 2d at 664.

¶ 25. We explained in *Anderson* that the corroboration required under Wis. Stat. § 908.045(4) is different from the more stringent corroboration standard in Federal Rule of Evidence 804(b)(3), which requires "corroboration clearly indicating the trustworthiness of the statement." *Anderson,* 141 Wis. 2d at 660–61. We noted that Wisconsin never embraced the language or approach of the federal rule, and that a comparatively less restrictive standard was therefore appropriate. *Id.* We concluded that a less demanding standard would better balance the respective roles of the judge and jury and protect the defendant's constitutional right to present evidence under *Chambers v. Mississippi,* 410 U.S. 284 (1973). *Anderson,* 141 Wis. 2d at 662–65.

¶ 26. The lower courts in this case applied the *Anderson* corroboration standard as amplified by the court of appeals in *State v. Johnson.*[5] In *Johnson,* the defendant sought to introduce a statement by his brother in which the brother maintained that he, not the defendant, committed the charged offenses. *Johnson,* 181 Wis. 2d at 480. The brother made his statement to a defense investigator, who memorialized it in a written report. While recognizing that *Anderson* had rejected the "clearly trustworthy" standard of the federal rule, the court of appeals in *Johnson* held that

---

[5] The court of appeals has stated that its opinion in *State v. Johnson,* 181 Wis. 2d 470, 510 N.W.2d 811 (Ct. App. 1993), "clarified" the corroboration standard established in *State v. Anderson,* 141 Wis. 2d 653, 416 N.W.2d 276 (1987). *See State v. Malcom,* 2001 WI App 291, ¶ 16, 249 Wis. 2d 403, 638 N.W.2d 918.

*Anderson* does not authorize admission of a statement against penal interest if the corroboration is "merely debatable." *Id.* at 483.

¶ 27. The defendant in *Johnson* had argued in the circuit court that his brother's statement against penal interest was sufficiently corroborated because it recited facts that only someone present during the commission of the offense would know, and that the offense itself was consistent with the brother's criminal history. *Id.* at 484. The State responded that there was "no independent corroboration" of the brother's statement, and noted that the defendant and his brother had been in the county jail at the same time, suggesting the potential for collusion. *Id.*

¶ 28. In holding that the brother's statement was not sufficiently corroborated, the court of appeals in *Johnson* did not explicitly adopt the State's criterion of "independent" corroboration evidence. *Id.* at 484–85. However, the facts of the case suggest that the absence of corroboration separate and apart from the contents of the brother's statement was an apparent basis for both the circuit court's decision to exclude the evidence and the court of appeals' decision to affirm. *Id.* at 485. The court of appeals emphasized "the total lack of corroborating information that was *independent* of what [the brother] could have learned from [the defendant] while they were both in the county jail." *Id.* at 486.

¶ 29. Dissenting from the *Johnson* court's resolution of the corroboration issue, Judge Schudson objected to what he viewed as the majority's injection of an "independent source" requirement for corroboration under Wis. Stat. § 908.045(4). *Id.* at 498 (Schudson, J., concurring in part, dissenting in part). In response, the majority cautioned that its use of the term "indepen-

dent" should not be broadly construed to eliminate the possibility that a statement against penal interest could be sufficiently "self-corroborating" to be admissible:

> The Dissent mischaracterizes our use of the word "independent." Of course a statement offered under Rule 908.045(4), Stats., can be sufficiently self-corroborated to be admissible. That is not the issue here, however. The facts recited in [the declarant's] statement that are alleged to be corroborating were not independent of what [the declarant] could have easily learned from his brother. This was a factor that the trial court could appropriately consider in the exercise of its discretion.

*Johnson,* 181 Wis. 2d at 486–87 n.7.

¶ 30. Here, the court of appeals took note of the *Anderson* corroboration test but cited and applied *Johnson's* "merely debatable" sub-standard for determining the sufficiency of corroboration under Wis. Stat. § 908.045(4). The court of appeals also appears to have applied the "independent source" requirement that the *Johnson* dissent cautioned against and the *Johnson* majority disavowed. The court emphasized the lack of "independent evidence to corroborate Daniel's statements," as well as the "inconsistencies between the statements made by Daniel and the victim's testimony."
■

¶ 31. The State has now conceded that there is no "independent source" requirement for corroboration under Wis. Stat. § 908.045(4) and that the lower courts erred in concluding that Daniel's statements were inadmissible as insufficiently corroborated. We agree, and conclude that the *Johnson* court's refinement of the *Anderson* standard for determining the sufficiency of corroboration under Wis. Stat. § 908.045(4) is unclear and open to misinterpretation so as to be inconsistent

with *Anderson.* The "merely debatable" language in *Johnson* confuses rather than clarifies the *Anderson* standard. The *Johnson* court's limited use of the term "independent" evidently has been improperly elevated to a mandatory corroboration requirement.

■

¶ 32. The test for corroboration established in *Anderson* is intermediate and flexible, striking a balance between the need for exculpatory evidence and the "countervailing concern for the exclusion of untrustworthy statements." *Anderson,* 141 Wis. 2d at 663. It neither prescribes nor limits the type or source of acceptable corroboration under Wis. Stat. § 908.045(4). Application of the *Anderson* standard specifically does *not* involve an evaluation of the credibility or weight of the statement against penal interest itself; this is to "maintain[] the jury's role of assessing credibility and determining weight while properly limiting the judge's role to a threshold admissibility determination." *Id.* at 665. The *Anderson* standard tests the sufficiency of the corroboration by evaluating its tendency to lead a reasonable person to conclude that the hearsay statement against penal interest *could* be true.

■

¶ 33. Thus, corroboration sufficient to meet the *Anderson* test will usually be "debatable," at least to the extent that the term "debatable" suggests a conflict between two distinct points of view, or, in this context, evidence that points in different directions. Nothing in *Anderson* or Wis. Stat. § 908.045(4) requires the exclusion of a hearsay statement against penal interest merely because there is conflicting evidence in the record—that is, where the corroboration is "debatable." If this were true, then no corroboration would ever be sufficient, because the declarant's self-inculpatory

statement is being offered to exculpate the accused and is therefore by definition inconsistent with at least some of the state's evidence, and hence any corroboration of the statement will necessarily be "debatable."

¶ 34. To the extent that *Johnson* is interpreted as always requiring corroboration "independent" of the statement against penal interest itself, it is inconsistent with *Anderson,* which placed no such limitation on the nature of the corroboration required under Wis. Stat. § 908.045(4). Although corroboration will usually be contained in evidence that is external to the statement itself, a requirement that corroboration *must always* be "independent" would be arbitrary. That a declarant's confession is repeated to more than one witness may well be sufficient, in light of all the facts and circumstances, to permit a reasonable person to conclude that it could be true, even in the absence of corroboration that is "independent" of the confession itself. In this sense, the statement against penal interest may be sufficiently "self-corroborating," under the circumstances, by virtue of having been repeated in substantially the same form to a second or third witness. There may well be other circumstances in which a statement against penal interest is sufficiently self-corroborating as to meet the *Anderson* standard for admissibility under Wis. Stat. § 908.045(4), a possibility specifically recognized in *Johnson.*

¶ 35. The *Johnson* majority cautioned against too broad an interpretation of its use of the term "independent." We conclude that neither Wis. Stat. § 908.045(4) nor *Anderson* imposes a fixed requirement of corroboration that is independent of the declarant's self-inculpatory statement. The "merely debatable" substandard for corroboration articulated in *Johnson*

270

conflicts with *Anderson.* We reaffirm the *Anderson* standard of "corroboration sufficient to permit a reasonable person to conclude, in light of all the facts and circumstances, that the statement could be true."

¶ 36. Applying *Anderson* to the facts of this case, we conclude that Daniel's out-of-court statements inculpating himself and exculpating Guerard in the commission of the charged offenses are corroborated and therefore admissible. The record contains two statements by Daniel in which he admitted that he, not Guerard, committed these crimes. Judy Cole reported to Investigator York that Daniel confessed his commission of the crimes to her in considerable detail. Cole reported that she saw both Joseph and Daniel in the late morning on the day the crimes were committed. She said Daniel was wearing green baggy pants. According to Cole's statement, Daniel told her that he and another person (not Joseph Guerard) went to the Borchelt residence, and that Daniel entered the house alone. Daniel told Cole that the woman in the house started screaming and punching him, at which point he "lost it" and "beat her up." He dragged the woman downstairs and demanded that she open the gun cabinet, but when it took a long time for her to find the key, he grew impatient and punched the cabinet, breaking the glass. He then removed several handguns, including a .357 with a long barrel. Cole reported that she saw several of the guns, all handguns.

¶ 37. Cole said Daniel told her that the woman did not see his face because he had a mask on and his hood pulled up. Daniel told Cole that Joseph Guerard was not with him at the Borchelt residence because he had dropped him off at a gas station before the break-in. Cole also told Investigator York that she was in posses-

271

sion of the clothing that Daniel was wearing on the day the crimes were committed, and that there was blood on them.

¶ 38. Daniel's statement, as reported by Cole, is corroborated by a confession Daniel gave to Investigator York, who interviewed Daniel about four months prior to Guerard's trial and prepared a three and one-half page written report of their conversation. Daniel's confession to York is substantially similar to his confession to Cole.[6] As noted earlier, Attorney Kurzynski did not inform the circuit court of the existence of this statement, either as a separate statement inculpating Daniel and exculpating Guerard, or as corroboration for Daniel's statement to Cole. York reports that Daniel told him that Joseph Guerard had nothing to do with the crimes at the Borchelt residence. Daniel told York that on the morning of the crimes, he dropped Guerard off at a gas station next to the Northridge shopping mall, telling him only that he would come pick him up later. He then picked up another person, with whom he drove to the Borchelt residence. Daniel told York that on the day of the crimes he was wearing green pants and a blue and white flannel shirt. Daniel told York that he was the only person to enter the Borchelt residence. Just before entering, he put an orange handkerchief on as a mask.

¶ 39. Daniel told York that the woman in the residence punched him in the jaw and split his lip. He retaliated, hitting her several times. He said that he used his fist to break the glass on the Borchelt's gun cabinet. Daniel showed York his right hand, which York

___

[6] Each statement is corroborative of the other, although chronologically Daniel's confession to Cole came before his confession to York.

reported as having scars on it. Daniel said he was not carrying any weapons during the commission of the crimes. After leaving the house with the guns and some stolen money, Daniel dropped off the other person and picked up Guerard where he had left him. He said he did not tell Guerard what had just transpired, that Guerard did not see the guns because they were under the seat in a bag, but that Guerard was very agitated by the sight of the blood on Daniel's clothes. Daniel refused to write a statement for York and indicated he would not turn himself in until at least after Guerard's trial started.

¶ 40. Although Daniel's statement to York is not precisely identical to his confession to Cole, a reasonable person could conclude on the basis of Daniel's confession to York that, in light of all the facts and circumstances, his earlier confession to Cole was true. The general description of the break-in, assault, and robbery, though not all the details, is substantially similar in both statements. In both statements, Joseph Guerard is described as a non-participant, having been dropped off at a gas station prior to the commission of the crimes. In both statements, Daniel wears green pants. The description and sequence of events is basically the same. In both statements, Daniel's hand is injured and there is blood on his clothing.

¶ 41. It is true that the details in Daniel's statements are not entirely consistent with Borchelt's and Guerard's trial testimony. Borchelt testified that the perpetrator broke open the glass gun cabinet with a knife, rather than his bare hand, as Daniel claimed in his statements. Guerard testified, contrary to Daniel's statements, that Daniel told him about the plan to rob the Borchelt residence during their car ride together. Daniel said he wore a handkerchief over his face during

273

the robbery, whereas Borchelt reported that the perpetrator pulled a turtleneck shirt up over his face.

¶ 42. These inconsistencies do not mean that Daniel's statement to Cole is uncorroborated. That there are some discrepancies goes to the jury's evaluation of the weight and credibility of Daniel's admissions. The fact that Daniel repeated his confession to Cole in substantially the same form in a later interview with Investigator York, and that the confession is similar in certain important respects to Borchelt's and Guerard's trial testimony, is enough to satisfy the *Anderson* corroboration standard. There is sufficient evidence here to permit a reasonable person to conclude, in light of all the circumstances, that Daniel's self-inculpatory statement could be true, and that is all the corroboration standard requires.[7] We see no basis to exclude Daniel's confessions under Wis. Stat. § 904.03.

B. Guerard's Ineffective Assistance of Counsel Claim

¶ 43. To prevail on a claim of ineffective assistance of counsel, the defendant must establish that his attorney's performance was deficient in the constitutional sense, that is, that his attorney's representation fell below objective standards of reasonableness. *Strickland,* 466 U.S. at 690. Counsel is "strongly presumed to have rendered adequate assistance." *Id.* The court must "determine whether, in light of all the circumstances,

---

[7] As we have noted, the State now concedes that the self-inculpatory portions of Daniel's out-of-court statements are admissible. The State argues, however, that certain discrete parts of Daniel's statements are not in fact self-inculpatory, and therefore should be excluded. As we are reversing and remanding for a new trial, we will not undertake a dissection of Daniel's statements here.

the identified acts or omissions [of counsel] were out-side the wide range of professionally competent assis-tance." *Id.* The defendant must also establish prejudice, defined as a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* When the challenge is directed at the conviction, "the question is whether there is a reason-able probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

¶ 44. Attorney Kurzynski did not subpoena York —indeed, did not talk to him—nor did he alert the circuit court to the existence of York's reports. All the court was told was that Cole was available to testify that Daniel confessed to her. The colloquy concerning Daniel's confession to Cole ended inconclusively, and Attorney Kurzynski did not raise the subject again.

¶ 45. At the *Machner* hearing, Attorney Kurzyn-ski remembered very little about the trial— understandable given the passage of time and the fact that he had turned over his file to successor counsel. He testified that he did not interview or subpoena York or otherwise follow through on the effort to admit Daniel's confessions because he thought the confessions were hearsay and that York's reports were the work product of the State Public Defender's office, and because Daniel had not signed any statement. The State con-cedes that these reasons are objectively unreasonable, but argues that a decision to forego admission of Daniel's confessions was otherwise objectively reason-able because of the inconsistencies between the state-ments and the victim's testimony, and because Daniel separately denied any involvement in the crimes when

interviewed by a police investigator, which would have been admissible in rebuttal.

¶ 46. Just as the inconsistencies between Daniel's hearsay statements and the victim's testimony do not defeat corroboration under Wis. Stat. § 908.045(4), they do not provide an objectively reasonable basis for counsel to have declined to use Daniel's admissible self-inculpatory statements in defense of Guerard. The inconsistencies may diminish the relative weight and credibility of Daniel's hearsay confessions but do not provide an objectively reasonable strategic rationale for foregoing their use altogether. Similarly, Daniel's denial of involvement when interviewed by the police would have been a factor for the jury to consider in evaluating the believability of Daniel's confessions to his sister and the SPD investigator; it does not, however, provide an objectively reasonable justification for failing to use the statements at all. Guerard's trial strategy was to suggest that there was evidence pointing to his brother Daniel as the perpetrator of these crimes. We see no objectively reasonable basis to forego the use of Daniel's admissible hearsay confessions, which support this theory of defense. Guerard has demonstrated that his counsel's performance in this regard was deficient.

¶ 47. We also conclude that Guerard has established that he was prejudiced by his counsel's deficient performance. There is a reasonable probability of a different result if the jury had received the evidence of Daniel's confessions to Cole and York. We acknowledge that the victim's testimony was compelling; Judge Wolfgram was able to recall it at the *Machner* hearing even six years after the trial. Also, Daniel's hearsay statements are admittedly not completely consistent with

the victim's testimony about the break-in, and his denial of involvement to police would likely have been admitted in rebuttal. The State argues that these factors preclude a conclusion that Guerard was prejudiced. However, citing ethical obligations (*see* SCR 20:3.8, Special Responsibilities of a Prosecutor), the State invites this court to consider exercising its discretionary authority under Wis. Stat. § 751.06 to reverse in the interest of justice on the ground that the real controversy has not been tried.

¶ 48. The State's position in this regard is based in part upon statements York took from Guerard's girlfriend and her sister which tend to suggest that Guerard might have been involved in the crimes as an aider and abettor, accompanying his brother in the car but not entering the Borchelt home. This position posits a scenario that results in a guilty verdict against Guerard on retrial, but as an aider and abettor under the party to the crime statute, Wis. Stat. § 939.05. Because Judge Wolfgram imposed a 52–year sentence on the basis of Guerard's conviction as the sole direct perpetrator of these violent crimes, the State suggests that a conviction on this alternative theory would probably draw a shorter sentence.

¶ 49. Whether the prejudice is viewed as a different result at trial or a lesser sentence, we conclude that prejudice under *Strickland* has been established. Despite the strength of the victim's testimony and the existence of some inconsistency between her testimony and Daniel's confessions, the failure to put before the jury Daniel's hearsay statements inculpating himself and exculpating Guerard creates a reasonable probability of a different result at trial. The jury would have had to determine the weight and credibility to assign to Daniel's confessions, and might have convicted Guerard

anyway. But the failure to introduce Daniel's admissible confessions exculpating Guerard undermines our confidence in this verdict. There is a reasonable probability that the jury would have viewed Daniel's hearsay confessions as creating a reasonable doubt about Guerard's involvement as the perpetrator of these crimes.

¶ 50. We will not comment here on the merits of the State's alternate theory that Guerard was along for the ride but did not enter the Borchelt home, and therefore likely would be convicted on retrial as an aider and abettor but not as a direct perpetrator. We note only that the State concedes that under this theory, Guerard probably would receive a shorter sentence due to the reduced degree of culpability; in that sense, there is prejudice. *See Glover v. United States,* 531 U.S. 198, 203 (2001) ("[O]ur jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance.") Guerard has established both the deficient performance and prejudice aspects of his claim of ineffective assistance of counsel. We therefore reverse and remand for a new trial.

*By the Court.*—The decision of the court of appeals is reversed, and the cause remanded for further proceedings consistent with this opinion.

¶ 51. SHIRLEY S. ABRAHAMSON, C.J. *(concurring).* I join the opinion except for note 3, which attempts to distinguish *State v. Evans.* See my dissent in *State v. Evans,* 2004 WI 84, 273 Wis. 2d 192, 682 N.W.2d 784.

¶ 52. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.